GAIDRY, J.
 

 |2In this case involving a claim for unpaid wages, penalties, and attorney’s fees, the trial court ordered the defendants to pay the plaintiffs unpaid wages, but denied her claim for penalties and attorney’s fees on the basis that she was an independent contractor rather than an employee. We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiff, Kathleen Hulbert, was hired by the Louisiana Democratic Mayoral Campaign Committee (“Mayoral Campaign Committee”) in November or December of 2008 to perform fundraising and event-planning services pursuant to a verbal agreement that she would be paid $3,000.00 per month for those services. Ms. Hulbert later entered into a written agreement entitled “Independent Contractor Agreement” with the Mayoral Campaign Committee which provided that she would perform fundraising and event-planning services from February 11, 2009 until February 11, 2010 for a payment of $5,000.00 per month. The Independent Contractor Agreement contained an item entitled “Relationship of Parties,” which provided:
 

 Contractor is an independent contractor of the Committee. Nothing in this Agreement shall be construed as creating an employer-employee relationship, as a guarantee of future employment or engagement, or as a limitation upon the Committee [sic] sole discretion to terminate this Agreement at any time without cause.
 

 In addition to the $5,000.00 fee to be paid bimonthly, the Independent Contractor Agreement provided for reimbursement of pre-approved expenses, as well as a monthly technology per diem and payment of gas expenses. No insurance was provided to Ms. Hulbert, she had no vacation or sick leave, she had no 401 (k) plan, and no taxes were withheld from her | .¡checks. The agreement also provided that Ms. Hulbert was free to engage in other independent contracting activities.
 

 Although the agreement provided for Ms. Hulbert to be paid on the first and fifteenth of each month, Ms. Hulbert was not always paid on time. Defendants alleged that the Democratic Mayoral Campaign Committee was a new entity and would only have the funds to pay Ms. Hulbert if Ms. Hulbert raised the money through her fundraising efforts. Britton Loftin, the Executive Director of the Democratic State Central Committee of Louisiana, testified that he negotiated Ms. Hul-bert’s contract with her and that she was aware that she needed to raise enough money to cover her fees. When Ms. Hul-bert was paid, it was by the Democratic State Central Committee of Louisiana, who did so as a loan to the Democratic Mayoral Campaign Committee. Ms. Hul-bert prepared invoices for her services, which were submitted to defendants for payment. The invoices, which Ms. Hul-bert prepared for herself on her own form, list her job description as “Independent Contractor,” and lists the Louisiana Democratic Party as the “Customer.”
 

 Ms. Hulbert terminated the Independent Contractor Agreement on April 3,
 
 *670
 
 2009 and made a demand for her unpaid wages, but was not paid. On June 24, 2009, she filed a petition seeking unpaid wages, penalties, and attorney’s fees in accordance with La. R.S. 28:631 & 632. The defendants argued that Ms. Hulbert was not entitled to recover under La. R.S. 23:631 & 632 because she was an independent contractor, not an employee.
 

 After a trial, the court found that the law and evidence clearly supported the conclusion that Ms. Hulbert was an independent contractor and not an employee. Therefore, the court found that although Ms. Hulbert was entitled to be paid for the work she performed under the contract, she [4was not entitled to penalties and attorney’s fees under La. R.S. 23:632. Ms. Hulbert appealed, asserting that the trial court’s conclusion that she was an independent contractor was manifestly erroneous and that, as an employee, she is entitled to penalties and attorney’s fees.
 

 DISCUSSION
 

 Ms. Hulbert’s claim for penalties and attorney’s fees was made under Louisiana Revised Statutes 23:632, which provides for the payment of penalty wages where unpaid wages are not paid in accordance with the provisions of La. R.S. 23:631, in the amount of ninety days wages at the employee’s daily rate of pay, or full wages from the time of the employee’s demand for payment until the wages are paid, whichever is less, plus reasonable attorney’s fees. In order to recover penalties and attorney’s fees under this statute, Ms. Hulbert had the burden of proving that she is an employee, rather than an independent contractor.
 
 Hillman v. Comm-Care, Inc.,
 
 01-1140, p. 9 (La.1/15/02), 805 So.2d 1157, 1163.
 

 Louisiana Revised Statutes 23:631 & 632 contain no definition of the term “employee.” The distinction between an employee and an independent contractor is a factual determination that must be decided on a case-by-case basis, and this determination is subject to the manifest error standard of review.
 
 Jeansonne v. Schmolke,
 
 09-1467, p. 5 (La.App. 4 Cir. 5/19/10), 40 So.3d 347, 354.
 

 In determining whether an independent contractor relationship exists, the court considers the following factors, which are indicative of an independent contractor relationship:
 

 1. a valid contract exists between the parties;
 

 2. the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
 

 |s3. the contract calls for specific piecework as a unit to be done according to the contractor’s own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
 

 4. there is a specific price for the overall undertaking; and
 

 5. the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
 

 Tower Credit v. Carpenter,
 
 01-2875, p. 6 (La.9/4/02), 825 So.2d 1125, 1129, citing
 
 Hickman v. Southern Pacific Transport Company,
 
 262 La. 102, 117, 262 So.2d 385, 390-91 (1972).
 

 The principal test in determining whether a relationship is an employer-employee relationship or a principal-independent contractor relationship is control over the work. However, it is not the supervision and control
 
 actually exercised
 
 which is significant, but whether, from the nature of the relationship, the right to exercise such control exists.
 
 Jeansonne,
 
 10-0437,
 
 *671
 
 p. 5, 40 So.3d at 354. The essence of the employer-employee relationship is the right to control, although that one factor is not necessarily controlling and the court should consider the totality of the circumstances in deciding whether an employer-employee relationship exists.
 
 Jeansonne,
 
 10-0437, pp. 5-6, 40 So.3d at 354-55.
 

 Ms. Hulbert first argues on appeal that since she did not sign a written contract with the defendants until February of 2009, after she had already been working for several months, and since the court must find that a valid contract existed between the parties in order to conclude she was an independent contractor, the court’s conclusion that she was an independent 1 ficontractor from December 2008 through February 10, 2009 is manifestly erroneous. We disagree.
 

 While Ms. Hulbert is correct that a valid contract is essential to finding an independent contractor relationship, we disagree that the contract must be written to be valid. Ms. Hulbert cites no authority for her proposition that an independent contractor agreement must be written to be valid, and we can find none. Although Ms. Hulbert did not enter into a written contract with the defendants at the time she began performing fundraising and event-planning services for them, neither party disputes that the parties contracted to have Ms. Hulbert perform fundraising and event-planning services for a fee of $3,000.00 per month. It is clear that there was a meeting of the minds and that a valid oral contract was confected.
 

 Ms. Hulbert next argues that the work being done was not of an independent nature because Mr. Loftin supervised and directed all of her work. Ms. Hulbert testified at trial that she was required by Mr. Loftin to come into the office every day, told by Mr. Loftin whom to call, required to have everything she sent out approved by Mr. Loftin, and given a schedule of events to attend by Mr. Loftin. On the other hand, Mr. Loftin testified that Ms. Hulbert came into the office only sporadically and was not required to do so. He explained that he did not supervise and direct Ms. Hulbert’s work; rather, he passed along donor lists and leads on potential donors and attempted to provide guidance to help her to get her fundraising efforts off the ground. Clearly the court was presented with conflicting testimony on this issue and made a credibility call, choosing to believe Mr. Loftin’s testimony regarding the independent nature of Ms. Hulbert’s work and the amount of direction and supervision exercised by Mr. Loftin. The trial 17court’s choice between conflicting testimony based upon a credibility determination cannot be clearly wrong.
 

 Ms. Hulbert next argues that she was not hired to perform “specific piecework,” but rather was hired to perform general fundraising duties and was expected to perform administrative duties like answering phones and taking messages. She alleges that “specific piecework” would have involved being hired to attend a specific fundraiser or call on a specific donor. Ms. Hulbert points to various emails in evidence as proof that she was expected to perform a variety of other non-fundraising activities; however, Mr. Loftin testified that Ms. Hulbert was not hired to do administrative duties in the defendant’s office, and he explained the context of the emails, which was that he was offering suggestions to guide her in her floundering fundraising attempts. In support of her argument, Ms. Hulbert cites
 
 Adams v. Greenhill Petroleum Corp.,
 
 93-795 (La. App. 5 Cir. 1/25/94), 631 So.2d 1231, 1234,
 
 writ denied,
 
 94-0477 (La.4/4/94), 635 So.2d 1114, where the court found that a contract which was “very general in nature and ...
 
 *672
 
 best described as a general services contract” did not call for specific piecework. However,
 
 Adams
 
 is factually distinguishable from Ms. Hulbert’s situation. In Adams, a worker was hired to perform a variety of tasks including crane and forklift operations, cutting grass, cleaning up, spreading shells, and moving pipe racks. He was paid different prices for different tasks, but none of the tasks were provided for under the contract, which merely provided, “This agreement shall control and govern all work performed by Contractor [Lafitte] for Company [Greenhill] under subsequent verbal and/or written work orders .... ”
 
 Id.
 
 On the other hand, Ms. Hulbert was hired only to fundraise and plan events for the Democratic Mayor’s Campaign Committee, for a set period of time, for a set flat fee. We do not agree that |sfor her job to have involved “specific piecework,” the contract would have to be for one specific task,
 
 e.g.,
 
 calling on a single donor. We find no error in the conclusion that Ms. Hulbert’s contract called for specific piecework.
 

 Ms. Hulbert’s next argument is that she was not paid a specific price for the overall undertaking, since she was paid bimonthly. Under the contract, Ms. Hulbert would be paid a set price, per month, in bimonthly installments, for twelve months. She seems to argue that the only way a person performing work under a contract can be an independent contractor is if they are paid in one lump sum. However, she cites no authority which supports her argument, and we do not believe that the contract failed to provide a set price for the undertaking.
 

 Ms. Hulbert next argues that, according to the contract between the parties, she was an at-will employee who could be fired at any time, and therefore she could not be an independent contractor. The Independent Contractor Agreement between Ms. Hulbert and the defendants provides that “The Committee may terminate the use of Contractor services at any time without cause and without further obligation' to Contractor except payment due for services prior to date of such termination.” The right to terminate without cause, where no term of employment is prescribed, is characteristic of an employer-employee relationship.
 
 Hickman,
 
 262 La. at 119, 262 So.2d at 391. However, as explained above, there are a number of factors the court must consider in determining whether an independent contractor relationship exists; no one factor is controlling, and the court must consider the totality of the circumstances.
 
 Jeansonne,
 
 10-0437, pp. 5-6, 40 So.3d at 354-55.
 

 Finally, we note that whether Ms. Hul-bert was an employee or an independent contractor is a close question. However, upon hearing the evidence, the trial court made a factual determination that Ms. Hulbert was Ran independent contractor. While we may have ruled differently had we reviewed this case de novo, the trial court’s determination that Ms. Hulbert was an independent contractor is a factual determination that we do not find manifestly erroneous or clearly wrong. As such, the trial court judgment must be affirmed.
 

 CONCLUSION
 

 The judgment appealed from is affirmed. Costs of this appeal are to be borne by plaintiff, Kimberly Hulbert.
 

 AFFIRMED.
 

 CARTER, C.J., concurs.